### ADAMS et al. v. C. A. SMITH TIMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1921.)

No. 3496.

1. **Public lands ⬚27—Evidence held to show patent for placer mine and prior timber patent covering the same land.**

   Evidence as to surveys of public lands *held* to show that a patent for placer mine and a timber patent covered in part the same land, so that the placer patent must yield to the prior timber patent.

2. **Mines and minerals ⬚49—Claimants of placer mine by adverse possession held not to show appropriate use.**

   Plaintiffs, claiming a placer mine by adverse possession, must show appropriate use as a mining ground, and this was not shown by evidence that they had a caretaker on a nearby claim, who had a number of properties to look after, and had a garden on part of the claim, and that cattle belonging to claimant ranged over the placer and other nearby claims.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Charles M. Bourquin, Judge.

Action by Edson F. Adams and others against the C. A. Smith Timber Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

J. P. O'Brien, of San Francisco, Cal., for appellants.
Grant H. Smith, of San Francisco, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Issuance of two patents embracing the same land was the originating cause of this suit to determine a conflict between the Eden placer mine and certain patented timber lands. Appellants Adams and others, owners of the placer claim, brought suit to quiet title against defendants, including Sage Land & Improvement

---

Company, owners of the patented timber lands. The Eden placer, located in 1886, was patented in 1891, and is situate partly in section 33 and partly in section 34, township 12 north, range 1 east, Humboldt meridian, California. Defendants claim through patent to the S. W. ¼ of section 34, issued in 1887.

The District Court quieted title in the plaintiff to that portion of the N. W. ¼ of section 34 which included a part of the Eden placer mine, but decided that plaintiffs had no right or interest in that part of the Eden placer mine which lies within the S. W. ¼ of section 34, and made a decree accordingly. Plaintiffs appealed from only that part of the decree which related to the conflicting area in the S. W. ¼ of section 34.

Surveys made in 1873, when township 12 was unsurveyed ground, established a monument at the southeast corner of the Pioneer mine, which was also the northeast corner of the Union Gold Bluff placer. In 1878 United States Deputy Mineral Surveyor Reilly surveyed township 10, and ran the Humboldt meridian line through townships 10, 11, 12, and 13, and put corner and quarter corner posts along the entire distance, including the northwest corner and southwest corner of section 34. These section corners fixed by Reilly were found and adopted by later United States surveyors. Haughn, who made a survey of township 11 in 1882, adopted them; so did Forman, who surveyed township 12 in 1882; so did Gilchrist, who surveyed township 13 in 1886; so did Hurlburt, who retraced Reilly's line in 1903 and corrected the Forman plat. The detailed notes of the surveys were in evidence, and Judge Bourquin made the following references to them:

"In 1882 Haughn surveyed township 11 north. He began at Reilly's established northeast corner of township 10; thence he established the northeast corner of township 11; thence he ran due west for the north boundary of township 11 (also to serve as the south boundary of township 12 north), establishing corners to and including the southeast corner of this section 34; thence his notes say he ran due west 80.07 chains to the 'established corner' (Reilly's meridian corner) at the southwest corner of this section 34; thence his notes further say he ran due west 56.90 chains to intersection with placer survey 38, of date 1873, where he set a post and a duly marked stone for the 'corner to fractional sections 5, 32' (in fact, 4 and 33), from which the northeast corner, duly marked, of placer survey 38, bears north 9¾ degrees east, 57 chains. Two links from said northeast corner of placer survey 38 is an iron mineral monument of 1873, but Haughn does not mention it.

"Haughn's notes also say that from the southeast corner of section 4, township 11, he ran due north 80.10 chains to the established corner (Reilly's meridian corner) at the southwest corner of this section 34. Haughn's errors, omissions, and frauds are obvious, when it is pointed out that he assumes to arrive at and depart from Reilly's meridian southwest corner of this section 34 on a due west course; but his corners, still existing, east of said southwest corner and on his own township line, viz. southeast corner of section 34, of 35, and of 36, are some 1,200 to 1,300 feet south of said course; that he locates the northeast corner of placer survey 38 some 3,700 feet north of said course, whereas in fact it is only about 300 feet north thereof; that from his southeast corner of this section 34 to Reilly's meridian southwest corner of section 34 the course is about north 76 degrees west, and from said meridian corner to 57 chains south of the northeast corner of placer survey 38 the course is about south 50 degrees west, but he gives them west; that he failed to find Reilly's meridian southeast corner of section 4, township 11, though it was and yet is there, established a new corner, yet there,

some 963 feet south of it, and says thence he ran north 80.10 chains to the established southwest corner (Reilly's meridian corner) of section 34, whereas the distance is some 94 chains.

"Also in 1882 Forman surveyed this township 12. His survey purports to conform and tie to Reilly's meridian corners and to Haughn's corners between townships 11 and 12. Forman's notes say he commenced this survey at Haughn's northeast corner of section 2, township 11; thence north to the north boundary of township 12, but surveying interior section lines east in his progress; then he commenced at Haughn's northeast corner of section 3, township 11; thence likewise north (and east) to the north boundary of township 12; then he commenced at Reilly's meridian southwest corner of this section 34 (theretofore incorporated as such in Haughn's survey); thence likewise north (and east) to the north boundary of township 12; then he surveyed interior section lines west from Reilly's meridian to placer surveys that along the ocean render fractional all sections west of said meridian.

"Of this section 34, Forman's notes state that he surveyed the east boundary by running north 80 chains from Haughn's southeast corner of the section, where Forman established the northeast corner of section 34; that he surveyed the north boundary by running east 80.09 chains from Reilly's meridian northwest corner of section 34 (it and also Reilly's southwest corner incorporated as such by Forman in his survey), to Forman's established northeast corner of the section. He concludes his notes by references to placer survey 38 and other placers adjoining, wherein he perpetuates Haughn's error by locating the northeast corner of said survey (38), 57.50 chains north 9¾ degrees east of the corner (Haughn's) of fractional sections 4 and 33 on the east boundary of said placer survey and the south boundary of township 12. He likewise fails to mention the aforesaid mineral monument.

"That Forman, too, committed errors, omissions, and frauds is to be inferred in that he did not discover, but perpetuated, Haughn's, and added to them; he assumed to find Haughn's southeast corner of section 34, 80 chains south of Forman's northeast corner of section 34 (by him established due east of Reilly's meridian northwest corner of said section), whereas it is some 94 chains south thereof; and subsequent rather indefinite official and other search for Forman's subdivisional work in township 12 disclosed few traces thereof.

"From these surveys of Reilly, Haughn, and Forman the official plat of township 12 was made and filed in the land office in 1883. It delineated section 34 and all other sections east of Reilly's meridian as normal square sections of 640 acres, save that the sections of the north boundary of the township were a few acres less. In February, 1886, all entries in township 12 were suspended. Later in the year Gilchrist surveyed township 13, and ran lines disclosing defects in Haughn's and Forman's surveys.

"Although the suspension aforesaid was not formally revoked until 1892, defendant's patent for the southwest quarter of section 34, issued in 1887, and plaintiff's patent in part for part of said southwest quarter issued in 1891. The conflict was at all material times patently disclosed by the Land Department's records, of which records plaintiffs and all other public land purchasers are charged with notice and knowledge."

Hurlburt, an examiner of surveys, was directed to find what errors, if any, existed in the Haughn and Forman surveys. In going over the work, Hurlburt made no changes in township or section lines, but discovered that Forman had put certain placer patents 57 chains too far north, and that the error traceable to Haughn and Forman was due to the description as from a post set by Haughn near the west end of the township line between townships 11 and 12. The Haughn notes say:

"The N. E. corner of Union Gold Bluff placer mining claim bears N. 9¾ east, 57 chains distant, which is a spruce 10 in. in dia. marked X on N., S., and W. faces."

The fact is the northeast corner of the Union Bluff placer is 270 feet north of the township line, and Haughn's failure to refer to the Pioneer mineral monument, which was two links from the northeast corner post of the Union Bluff placer, is quite strong evidence that he was not upon the ground.

The appellants insist that the field notes of the Haughn and Forman surveys show that the line between townships 11 and 12, established by Haughn and Forman in 1882, "is about 52 chains, or approximately 3,440 feet, south of where it was placed by Hurlburt in his resurvey in 1903," and that the evidence of Wasson, a government surveyor, discloses no conflict between the Eden placer and the S. W. ¼ of section 34, until Hurlburt's survey in 1903. Wasson testified that, from notes and plats in evidence, the south line of township 12 was about 56 chains further south than as shown on the township maps. Mr. Wasson admitted, however, that all surveyors had found a corner common to sections 27, 28, 33, and 34, the so-called Reilly corner. The deduction of Mr. Wasson is in conflict with the evidence showing that Haughn's, Forman's, and Hurlburt's field notes indicate that the south line of township 12 was correctly fixed by the Surveyor General's office using Haughn's field notes, showing it to be 56 chains north of the line estimated to be correct by Mr. Wasson.

A witness of many years' experience as a timber cruiser testified that he followed westerly on Haughn's township line, using the Haughn field notes and searching for monuments, and that he found many corners as far west as the meridian line at the southwest corner of section 34; but he found no trace of Haughn's survey west of the point where Haughn reported he placed monuments. The witness also said that about 300 feet north of the west end line of the township, which Haughn described as having been run by him, witness discovered the northeast corner of the Union Gold Bluff placer claim, which by Haughn's field notes was located 57 chains further north. Mr. Lentell, a civil engineer of many years' experience in the survey of timber and mining claims in the northern part of California, said that he surveyed the section of country involved in this litigation, and that he found the Reilly corner, but did not find monuments as Haughn describes along the township line running west from the southwest corner of 34. Not finding the monuments reported by Haughn, Mr. Lentell asked the caretaker for one of the appellants to show him where the mineral monument was, and was shown a spruce monument 270 feet north of the west end of the township line. Witness said:

"I think the distance is 270 feet; there I found the monument that he showed me, and the stump of the old spruce tree that was called for in the north, a 10-inch spruce blazed X on three sides. I found the Pioneer monument right there, two links east of it from the spruce."

This spruce tree is what was spoken of by some of the witnesses as a mineral monument, but it was stated that it was merely the northeast corner post of the Gold Bluff placer claim.

What course Haughn followed westward, when he surveyed the township line between 11 and 12, is a subject of dispute; but it is clear

that he found, and adopted Reilly's southwest corner of section 34, which corner is common to sections 33 and 34 of township 12 and sections 3 and 4 of township 11, on the meridian line. The course he followed westward is not certain, but there is abundant support for the view of the District Court that Haughn made false calls and gave false measurements, and that the township line was as delineated on Hurlburt's plat.

[1] According to the field notes and patent, the Eden placer is tied to the northwest corner of section 34 and to the Pioneer mineral monument. Reilly, Forman, and Hurlburt describe the post and bearing trees at the northwest corner of section 34; so did Smith, a deputy mineral surveyor, who surveyed the Eden placer for patent. These several ties fix the site of the mining claim in sections 33 and 34, without regard to the posts which Haughn recites were set by him west of the southwest corner of section 34, and without regard to the ties claimed to have been made by Haughn and Forman to the Gold Bluff placer claim. The monument at the southwest corner of section 34, fixed by Reilly in naming the meridian line, and the monument at the southeast corner of section 34, on the township line as fixed by Forman and Haughn, the monument at the northwest corner of section 34, on the meridian line, and the monument at the northeast corner of section 34, fix the locus of section 34 on the ground. Thus we have the Eden placer and section 34 definitely located and in part covering the same land. Under such conditions the conflict must be resolved by requiring the patent for the Eden placer to yield to the timber patent theretofore issued to the predecessors of the appellee.

[2] The issue of title by prescription must also be determined against appellants. It is true appellants paid the taxes, but so did appellees; hence that is of no special moment. The possession, which appellants had, consisted of having a caretaker, who for many years lived on a nearby claim and had a number of properties to look after. A small herd of cattle belonging to appellants ranged over the Eden placer and other nearby claims, and the caretaker had a garden on some of the ground embraced within one of the claims. There was no fence or inclosure about the Eden placer, and there is no proof that any work was done on the claims since 1886, other than the statements concerning necessary improvements recited in the field notes. While inclosure was not at all necessary, yet where plaintiffs allege possession of a placer claim, it is the rule that one claiming by adverse possession must establish that the property is held and used as a mining ground. Appropriate use must be shown. English v. Johnson, 17 Cal. 108, 76 Am. Dec. 574; Coryell v. Cain, 16 Cal. 573; Brumagim v. Bradshaw, 39 Cal. 24.

The decree is affirmed.